UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PEGGY MOUSAW,

                                    Plaintiff,

        -v-                                    7:09-CV-523

THE COUNTY OF SAINT LAWRENCE; THE
COUNTY OF SAINT LAWRENCE BOARD
OF LEGISLATORS, Individually and in their
capacity as the elected officials of the County;
KAREN ST. HILAIRE, Individually and in her
capacity as the appointed County Administrator
for the County of Saint Lawrence.

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

O'HARA, O'CONNELL & CIOTOLI           STEPHEN CIOTOLI, ESQ.
Attorneys for Plaintiff
7207 East Genesee Street
Fayetteville, NY 13066

HANCOCK & ESTABROOK, LLP              LINDSEY H. HAZELTON, ESQ.
Attorneys for Defendants
1500 AXA Tower I
Syracuse, NY 13221

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Peggy Mousaw ("plaintiff" or "Mousaw") brought this action alleging First

Amendment violations of free speech/association and retaliation (for exercising free speech),

state law defamation, and Fourteenth Amendment denial of due process.  Defendants

moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff opposed and defendants replied.  Oral argument was heard on October 23, 2009.  Decision was reserved.

## II.  BACKGROUND

The following facts are set forth in the complaint.  The facts are taken as true, and inferences are drawn in plaintiff's favor, as must be done on a motion to dismiss.

Mousaw was employed as Deputy Budget Director for defendant Saint Lawrence County ("County") beginning in June 2001.  The County Administrator, Donald Brining ("Brining"), was her boss.

Plaintiff was elected to the Board of Education of the Colton-Pierrepont Central School District ("school board") in May 2003.  She was frequently outspoken, and publicly criticized the school board's capital project, expenditures, and decisions.  She was subjected to accusations and innuendos by members of the school board and school district administration as a result of her outspokenness and criticism of the school board's actions.

Andrew Silver, Esq. ("Silver") was appointed attorney for the County in early 2006.  Silver was also attorney for the school board.

In February 2006, Jeff Bristol ("Bristol"), the school's capital project clerk of the works,  made a complaint that Mousaw had sexually harassed him.  The school board commenced an investigation into the complaint.

In April or May 2006 school superintendent Martin Bregg called Brining at plaintiff's place of employment to inform him of the sexual harassment complaint that had been made against plaintiff.

In July 2006, Silver announced the formal charges being brought against Mousaw at a school board meeting.  The press reported on the charges.

In September 2006 plaintiff filed a Notice of Claim against the School District.  She sought injunctive relief and monetary damages related to the sexual harassment charges brought by Bristol and the ensuing investigation and planned evaluation of the merits of the charges by the school board.  She alleged procedural due process violations, Freedom of Information Law violations, Open Meetings Law violations, and defamation.

In October 2006 Silver requested that plaintiff's seat for school board meetings be changed so that he would no longer be sitting next to her.  His rationale for the request was that he was uncomfortable sitting next to Mousaw because she named him in the Notice of Claim.

In November 2006, plaintiff was called in to a meeting with Brining and Chair of the County Board of Legislators Thomas Nichols about an accusation by the school board president that plaintiff was doing school district business on County time.  The school board president had asked that the County investigate and discipline Mousaw.  She denied the charges and requested that any accusations be put in writing.  That was never done.

The next day plaintiff requested a copy of her personnel file from Brining.  He replied that he had no such file.  Plaintiff made the same request to the personnel office, also to no avail.

Silver ceased being the attorney for the County effective the end of December 2006.  Peter Lekki, Esq. was appointed County attorney in January 2007.  In March 2007, Brining retired and Robert McNeil was appointed Interim County Administrator, becoming Mousaw's supervisor.

In June 2007, defendant Karen St. Hilaire ("St. Hilaire") was appointed County Administrator, succeeding McNeil as plaintiff's boss.  She started work around July 16, 2007.

On that day, she met with Mousaw, telling her to terminate her lawsuit against the school district before it affected her employment.

In early September 2007, St. Hilaire accused plaintiff of stealing personal belongings of other employees and of stealing a County laptop computer which was later discovered to be out for service. Further, she complained about FOIL requests made to the County related to plaintiff's school board lawsuit. St. Hilaire moved Mousaw to a very small office without a phone or computer network access. She was excluded from regular department meetings, staff training meetings, and budget meetings. St. Hilaire also attempted to exclude plaintiff from attending committee meetings of the County Board of Legislators, but relented when plaintiff showed her a written job description that stated it was one of her job functions to go to those committee meetings.

On September 24, 2007, plaintiff filed a lawsuit (related to the 2006 Notice of Claim) against the school board and others[1] alleging retaliation, libel, slander, and defamation.[2]

In October 2007, plaintiff inquired from personnel about how to make a complaint about harassment by St. Hilaire. Essentially she was told there only was a policy about sexual harassment which should be reported to the employee's supervisor, and if the alleged harasser was the supervisor they did not know how or to whom plaintiff could make a complaint. In November 2007 Mousaw complained to Lekki about harassment by St. Hilaire and requested a meeting with the Board of Legislators. Lekki took no action.

---

[1] This lawsuit is referred to as against the school board throughout this opinion for simplicity, although other related parties were also named as defendants.

[2] That action is case number 7:07-CV-1006.

Plaintiff was on sick leave from December 10 to 18, 2007.  On December 18, plaintiff's attorney wrote a letter to St. Hilaire setting forth a list of harassing, discriminatory, and disparate treatment she was suffering in her employment with the County.  The letter requested that the County cease and desist from these behaviors, but warned that Mousaw would take legal action if necessary.

On December 19, when plaintiff returned to work, St. Hilaire accused her of lying and abusing sick leave.  Later the same day defendant Legislator Sally Brothers observed St. Hilaire again accusing plaintiff of dishonesty and being deceptive regarding her use of sick leave.  On December 20, 2007, Mousaw received a doctor's note for continued sick leave and left work.

On January 5, 2008, Lekki sent plaintiff a letter notifying her that the Board of Legislators was considering eliminating her job, and she should not return to work.  On February 4, 2008, the Board of Legislators eliminated plaintiff's job, for which she had been paid about $67,000 annually.  It also added two jobs, an Assistant County Administrator, at an annual salary of about $52,000, and Secretary, with a salary of about $33,000.  Mousaw was told her position was eliminated as a general cost savings measure.  She applied for the Assistant County Administrator position, which had essentially the same functions as her job, but was not hired because she had the "wrong kind of degree."  Around the end of February 2008, plaintiff's belongings were shipped from her office to her home.

Plaintiff requested a reference letter from several County department heads, but did not receive any.  Eventually she was told by one of the department heads that St. Hilaire had advised them not to provide a letter of reference for her.

## III.  **MOTION TO DISMISS STANDARD**

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's factual allegations must be accepted as true and all reasonable inferences must be drawn in favor of the plaintiff to assess whether a plausible claim for relief has been stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-561, 127 S. Ct. 1955, 1964-67 (2007); Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1953 (2008) (holding that the pleading rule set forth in Twombly applies in "all civil actions").  The factual allegations must be sufficient "to raise a right to relief above the speculative level," crossing the line from "possibility" to "probability." Twombly, 550 U.S. at 557, 127 S. Ct. at 1966.  Additionally, "a formulaic recitation of the elements of a cause of action will not do."  Id. at 555, 127 S. Ct. at 1965.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. at 1965).  Moreover, "legal conclusion[s] couched as [] factual allegation[s]" need not be assumed as true as is required for factual allegations.  Id. at 1949-50.

Thus, in reviewing the sufficiency of the pleading, a court first may identify legal conclusions that "are not entitled to the assumption of truth."  Id. at 1950.  The court should then "assume [the] veracity" of "well-pleaded factual allegations . . . and determine whether they plausibly give rise to an entitlement to relief."  Id.

## IV.  **DISCUSSION**

### A.  **First Amendment Violations--First and Second Causes of Action**

Defendants argue that plaintiff's claims for relief sound in retaliation rather than free speech and association, and that her speech was not protected because it did not pertain to

a matter of public concern.  Although Mousaw argues that her first cause of action is strictly a free speech/association claim, a reading of the complaint and the cases cited by plaintiff in support of this argument make plain that it is a retaliation claim.  See Compl. ¶ 69 ("purpose for the Defendants' hostile and retaliatory acts. . . .  In retaliating against the plaintiff . . . ."); Gill v. Pidlypchak, 389 F.3d 379, 380-81 (2d Cir. 2004) (setting forth the standard for a First Amendment retaliation claim and analyzing Gill's claim).  Accordingly, plaintiff's complaint will be evaluated to determine if the factual allegations of the first and second causes of action plausibly give rise to an entitlement to relief for retaliation for the exercise of free speech.

The elements of a First Amendment retaliation claim are (1) the speech was constitutionally protected; (2) there was an adverse employment decision; and (3) a causal connection exists between the speech and the adverse employment decision.  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

In order to be protected by the First Amendment, speech by a public employee must be regarding a matter of public concern.  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058 (2d Cir. 1993).  Whether or not "'an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.'"  Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008) (quoting Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999)).  Personal workplace grievances are not protected.  Connick v. Myers, 461 U.S. 138, 145-146 (1983).  Moreover, the inquiry must be "whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'"  Ruotolo, 514 F.3d at 189 (quoting Lewis, 165 F.3d at 163-64)).

A defendant's conduct constitutes adverse employment action, with regard to a First Amendment retaliation claim, if the conduct "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotations omitted).  Thus, in addition to "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," less severe actions such as "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities" can be considered adverse employment actions.  Id. at 226.  Determining whether alleged conduct is adverse "is a heavily fact-specific, contextual determination," but in any event such conduct must be more than de minimis.  Id.  In the Second Circuit, it is not necessary to show that the plaintiff was actually chilled from engaging in protected speech. Id. n.2.

Finally, a causal connection between the protected speech and the adverse employment decision may be established with direct evidence of retaliatory animus or circumstantial evidence such as temporal proximity.  Morris, 196 F.3d at 110.

### 1.  Protected Activity

Mousaw alleges that her outspoken opposition to school board activities such as use of funds, including the capital project, as well as management inefficiencies and her filing of a Notice of Claim and subsequent lawsuit against the school board addressed matters of public concern and therefore are protected activities.

Publicly stated opposition to school board actions, including such things as the manner in which public funds were used (or misused) and management improprieties, are a matter of public concern and therefore could satisfy the first element of a retaliation cause of action.

Plaintiff's lawsuit (and its precursor Notice of Claim) against the school board alleged retaliation, libel, slander, and defamation related to the charges of sexual harassment brought by the school board against her.  Compl. ¶ 16.  The nature of the causes of action in the school board lawsuit are matters of personal, private concern, intended to redress personal grievances.  The filing of the lawsuit had no broad public purpose.  Mousaw's speech in the form of the lawsuit was not a matter of public concern.  See Ruotolo, 514 F.3d at 189.  Therefore, filing the lawsuit is not speech protected by the First Amendment.

### 2. Adverse Employment Action

Mousaw alleges two forms of adverse employment action:  first, that she was removed from her seat at Board of Legislators' meetings, falsely accused of criminal activity, forced to move her office, shut out of department meetings and legislative committee meetings, and changed her job description; then, second, abolished her position and terminated her employment.

Defendants concede that abolishing Mousaw's position and terminating her employment could constitute adverse employment action.  However, they argue that the other alleged actions are insufficient to constitute adverse employment action.

Plaintiff alleges that St. Hilaire started to harass her as soon as she became County Administrator.  St. Hilaire advised Mousaw to terminate her school board lawsuit on her first day as County Administrator.  Shortly thereafter, St. Hilaire accused plaintiff of

stealing.  St. Hilaire moved plaintiff to an office where she did not have the proper equipment to complete her job assignments, precluded her from attending various meetings, and complained about her accumulation and use of compensatory time.  These allegations plausibly could chill a person of ordinary fitness from exercising First Amendment rights, therefore giving rise to an entitlement to relief.  See id. at 225-26.

### 3.  Causal Connection

Mousaw asserts facts tending to show that the harassment leading up to elimination of her position and her termination were done in retaliation for her having filed (and not withdrawing) the lawsuit against the school board, which, as a matter of law, is not protected speech.  However, the only allegations relating to retaliation for her protected speech, her public criticism of school board activities, are essentially conclusory and formulaic recitations of the elements of the cause of action, without any basis in specific factual allegations.  For example, plaintiff alleges that "[d]efendants . . . took retaliatory actions against Plaintiff at the behest of members of the School Board, which included the termination of Plaintiff's employment . . . , for Plaintiff's continued public opposition and statements regarding School District and School Board business, as well as Plaintiff's lawsuit against the School Board and related parties."  Compl. ¶ 68.

### 4.  Summary--Elements of First Amendment Retaliation

Mousaw's filing of a lawsuit against the school board was not a matter of public concern and therefore is not speech protected by the First Amendment.  However, her public criticisms of the school board were protected speech.

Defendants' termination of plaintiff from her County position was an adverse employment action. Further, the factual allegations of the complaint relating to other harassing and retaliatory conduct plausibly could constitute adverse employment action.

There are no factual allegations relating to Mousaw's protected speech that plausibly establish a causal connection between her protected speech and the adverse employment actions. Therefore, plaintiff's first and second causes of action sounding in retaliation must be dismissed.

### B. Due Process--Fourth and Fifth Causes of Action

### 1. Property Interest

Defendants first argue that Mousaw had no property interest in her position as Deputy Budget Officer for the County.

New York Civil Service Law provides that government employees are entitled to notice and an opportunity to be heard when subjected to discipline or removal, with certain exceptions. N.Y. Civil Serv. Law § 75(b) (McKinney's 1999). Exempted from this procedural due process requirement are the positions of "private secretary, cashier or deputy of any official or department." Id. Plaintiff's position was Deputy Budget Officer, exempt from the protections of Civil Service Law § 75(b). Accordingly no due process claim related to a property interest in her government employment will lie.

Mousaw relies upon an understanding she had with the former County Administrator, Brining. According to plaintiff, she had a legitimate expectation regarding her job. However, any legitimate expectation she had based upon an understanding with Brining is insufficient to confer a property interest in public employment, particularly given the New York law that specifically exempts a person in her position from procedural protections.

Further, any understanding with Brining would no longer be applicable once he was no longer the County Administrator.  Rather, the parameters of the Deputy Budget Officer would be determined by the currently-serving County Administrator, in this case St. Hilaire.

Plaintiff had no property interest in maintaining her position with the County. Therefore, she was not entitled to notice and an opportunity to be heard prior to her termination.

### 2.  Liberty Interest

Defendants argue that this cause of action fails because there was no defamation of plaintiff in the course of her dismissal from government employment.

An employer simply making stigmatizing comments harming an employee's reputation does not implicate due process.  Morris v. Lindau, 196 F.3d 102, 114 (2d Cir. 1999).  Rather, there must be a "stigma plus" in order to implicate due process protections. Id.  In other words, the "loss of reputation [must be] coupled with some other tangible element;" that is, stigma plus adverse employment action.  Id. (internal quotation omitted).

Stigmatizing statements would be those that "call into question plaintiff's good name, reputation, honor, or integrity." Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004) (internal quotation omitted).  Also fulfilling the requirement for stigmatizing statements would be those that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession."  Id.  Rather than requiring a plaintiff to prove the stigmatizing statements are false, she need only raise the issue of their falsity.  Id.  Further, the stigmatizing statements must have been made

public.  Id.  Finally, the stigmatization must have taken place concurrently with an adverse

employment action such as termination.  Id.; Morris, 196 F.3d at 114.

The County abolished Mousaw's position on February 4, 2008, a negative alteration

to her status as an employee.  The alleged defamatory statements were "circulating and

distributing false and derogatory information about" Mousaw, "making false statements and

accusations against Plaintiff," and "allowing false accusations to be made against" her.

Compl. ¶¶ 89, 94.  The only specific factual allegations that could be construed as

defamatory are that in November 2007 St. Hilaire accused plaintiff of stealing a laptop, and

around mid-December 2007 St. Hilaire accused her of lying and abusing sick time.  Id. ¶¶ 37,

41-42.  Allegedly the mid-December statements were repeated to defendant County

Legislator Sally Brothers and County Board Clerk Ruth Doyle.  Id. § 41-42.

As to the accusation of stealing a laptop, Mousaw raises the issue as to its falsity in

stating that it was determined that the laptop was out for service at the time.  However, the

only assertions that this in some manner harmed plaintiff's reputation are conclusory.  See

Compl. ¶¶ 91, 96.  Further, there is no allegation that this statement was made in public.

As to the allegation of accusations of lying and abusing sick time, plaintiff raises the

issue of falsity with her categorical denial.  Again, however, Mousaw asserts harm to

reputation only in a conclusory fashion.  Id.  Plaintiff does assert that St. Hilaire made these

statements in the presence of Sally Brothers and Ruth Doyle, but that does not constitute a

public statement because both of these people were closely related to the County, as a

legislator and clerk.  With regard to both statements, made in November and December

2007, it cannot be said that they were made concurrently with or in the course of plaintiff's

termination on February 4, 2008.  See Martz v. Inc. Village of Valley Stream, 22 F.3d 26, 32 (2d Cir. 1994).

Mousaw has not stated a plausible stigma-plus claim for relief.  Thus, the fourth and fifth causes of action must be dismissed.

## V.  CONCLUSION

Plaintiff's filing of a lawsuit against the school board was not protected speech.  Her open and outspoken criticism of the school board was protected speech.  She has made sufficient allegations to state a plausible adverse employment action.  However, there is no plausible causal connection between her protected speech and the adverse employment action.  Mousaw's First Amendment claims must be dismissed.

Pursuant to New York Civil Service Law § 75(b), as an exempt employee Mousaw was not entitled to notice and an opportunity to be heard prior to her termination.  Further, the only allegations of harm to her reputation are conclusory, the alleged statements were not made publicly, and they were not made concurrently with her termination.  Thus, she failed to state a plausible claim for relief for deprivation of her liberty interest in her reputation.

Finally, because all federal causes of action are being dismissed, exercise of supplemental jurisdiction over the state law defamation claim is declined.  See Martz, 22 F.3d at 32.  Given the above, it is unnecessary to address defendants' remaining arguments.

Accordingly, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED; and

2.  The First, Second, Fourth, and Fifth Causes of Action are DISMISSED; and

3.  The Third Cause of Action is DISMISSED without prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 4, 2010
      Utica, New York.